# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

LYNN WOODARD,

    Plaintiff,

v.                                                                       ACTION NO. 2:09cv400

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3) seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. This Court recommends that the Defendant's Motion for Judgment on the Pleadings be DENIED. ECF No. 14. It further recommends that the Defendant's Motion for Summary Judgment be DENIED (ECF No. 15) and the Plaintiff's Motion for Summary Judgment (ECF No. 11) be GRANTED IN PART and DENIED IN PART.

### I. PROCEDURAL BACKGROUND

On April 5, 2007, Lynn Alan Woodard ("Plaintiff" or "Ms. Woodard") filed an application

for Disability Insurance Benefits (DIB), which alleged that she had been disabled since March 16, 2007. R. 86-93.[1]  Plaintiff's application was denied by the State Agency on August 8, 2007, (R. 57-61), and upon reconsideration on December 6, 2007. R. 67-73. A hearing was held before an administrative law judge ("ALJ") on January 12, 2009, where the Plaintiff was represented by Barry R. Taylor, Esq. R. 22-54.  Vocational Expert, Paula C. Day, appeared at this hearing, but was not called to testify. R. 13.  On March 10, 2009, the ALJ issued a decision denying Plaintiff's claim. R. 10-21.  The Appeals Council denied Plaintiff's request for review on June 10, 2009, thereby rendering the ALJ's decision the final decision of the Commissioner. R. 1-3. Plaintiff timely commenced the instant action for judicial review, pursuant to 42 U.S.C. § 405(g), after exhausting her administrative remedies. Recently, on November 8, 2010, Plaintiff filed a Motion to Supplement the Record with Notice of Consent Motion to Remand in a Similarly Situated Case within the Eastern District of Virginia. (ECF No. 21).  Defendant responded with an Opposition to Motion to Supplement the Record with Notice of Consent Motion to Remand on November 22, 2010 (ECF No. 26).  Plaintiff's Motion to Supplement the Record is GRANTED.

## II.  FACTUAL BACKGROUND

Plaintiff Woodard is fifty-one years old. R. 86.  Plaintiff has a four-year college degree. R. 33.  She claims an alleged onset date of disability of March 16, 2007.  Id.  A review of the Plaintiff's earnings record shows that Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2011, making the applicable period of review March 16, 2007 through the date of the ALJ's decision to determine if Ms. Woodard is disabled under the Social Security Act. Ms. Woodward has not been engaged in substantial gainful activity since

---

[1]Page citations are to the administrative record previously filed by the Commissioner.

March 16, 2007, having been previously employed as a teacher and counselor. R. 96–101.

Ms. Woodard claimed heart disease, depression, anxiety disorder, diabetes, arthritis and partial blindness limits her ability to continue to engage in substantial gainful employment. R. 114. For a period of twenty years, Plaintiff has received treatment from her primary care physician, Vincente N. Rono, Jr., M.D. R. 47. Dr. Rono treated Plaintiff's hypertension and uncontrolled diabetes with medication management. R. 203-04, 206-08, 212, 245. Dr. Rono also prescribed medication for anxiety and depression. R. 203–04, 206–08. Plaintiff also has a history of myocardial infarction in the anterioral wall and had a stent placement in 2002, for which she was followed by cardiologist Alan G. Bartel, M.D. R. 178-79. Since 2002, Plaintiff has not complained of cardiac symptoms to her treating physician. R. 178-79. On annual examination on March 27, 2007, Plaintiff seemed to be responding to medication. R. 182. On May 3, 2007, Jennifer Dryer, a nurse practitioner employed by Dr. Bartel, reported that Plaintiff underwent cardiac catherization. R. 183. The study showed non-obstructive coronary disease and normal left ventricular function, and normal renal arteries. R. 183, 192-95.

The record does not include any further treatment records from Dr. Bartel. R. 178-91. In October 2008, Ms. Woodard underwent a myocardial perfusion scan for complaints of chestpain. R. 252. Testing revealed hypokinesis of the apex with an ejection fraction of fifty percent. Id. The study showed an apical infarct without evidence of myocardial ischemia. Id.

On April 11, 2007, Ms. Woodard presented to Patrick F. Kilhenny, M.D., for a neuroophthalmologic consultation following an episode of nosebleed and a bloodshot eye on the left side. R. 199. Vision testing by her primary care physician was normal. R. 199, 204. Dr. Kilhenny's assessment was that Plaintiff suffered an optic neuropathy OS, which was presumably

nonarteritic ischemic optic neuropathy, especially considering the fact that she was a vasculopath and had multiple risk factors including hypercholesterolemia, hypertension, diabetes, family history of coronary artery disease, as well as smoking cigarettes. R. 200. Dr. Kilhenny encouraged Plaintiff to quit smoking and instructed her to continue on aspirin. Id.

On follow-up with Dr. Kilhenny in June 2007, Plaintiff had cupping of the optic nerves centrally with pallor of the nerve noted OS with a more-normal appearing optic nerve with cupping OD. R. 201. Her visual fields revealed subtle restriction. Id. Plaintiff's deep tendon reflexes were normal and her muscle tone and bulk were age appropriate. Id. Coordination and gait were normal. Id. MRI findings were abnormal. Id. Plaintiff had cerebrovascular disease, and Dr. Kilhenny instructed Plaintiff to have a follow up MRI in one year, to continue on aspirin, and to discontinue cigarettes to reduce future stroke risk. R. 201-02.

Plaintiff saw Dr. Ratnasiri Gunawardena in December 2008. R. 16. Dr. Gunawardena is Plaintiff's treating endocrinologist, and follows Plaintiff's diabetes. R. 24. In December 2008, following Ms. Woodard's appointment, he noted that her diabetes is advanced with complications including stroke and visual impairments. R. 16. On December 28, 2008, Dr. Gunawardena stated that due to the advanced stage of diabetes and significant complications, Ms. Woodard suffered from "significant disability and therefore she is not able to work as usual." R. 244.

In December 2008, Ms. Woodard underwent a mental health evaluation with Dr. Mark Long at the referral of her attorney, Barry Taylor, Esq. R. 245. Ms. Woodard reported problems concentrating, nervousness, feelings of unhappiness, sleeping and eating disturbances. Dr. Long diagnosed Ms. Woodard with a major depressive disorder and a generalized anxiety disorder. R. 248. He stated that these disorders coupled with physical limitations resulted in functional

4

impairments. Id. Dr. Long found that Plaintiff may perform simple learned tasks but may not be able to complete complex or detailed tasks in a timely manner due to her inability to concentrate. Additionally, she may not be able to appropriately respond to feedback from others on the job. Id.

At the administrative hearing, Plaintiff testified as to her work experience, as well as job performance problems which caused her to be fired as a counselor. R. 34. Plaintiff testified to her current medications and medical allergies. R. 41–43. Due to arthritis in her hands, Plaintiff testified that occasionally she needs help dressing and bathing herself. R. 44. Also, she related not being able to make meals, or drive and that she has visitors including her family, friends and neighbors visit with her and take her out to the mall or doctors' appointments. R. 51–52. Finally, Plaintiff related that she could lift no more than five pounds on a regular basis and some days could not lift one pound. R. 49–50.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2010); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N. Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the Court does not

undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. Perales, 402 U.S. at 390; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. Coffman, 829 F.2d at 517.

## IV. ANALYSIS

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity[2] by reason of any

---

[2] "Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; § 416.910 (2008). Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care

6

> medically determinable physical or mental impairment[3] which can
> be expected to result in death or which has lasted or can be expected
> to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a) (2008); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2008). To meet this definition, the claimant must have a "severe impairment"[4] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[5] 20 C.F.R. § 404.1505(a) (2008); see also 42 U.S.C. § 423(d)(2)(A) (2008).

---

of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572 (2008).

[3] "Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

[4] The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities. . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2008).

[5] The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2 (2004). However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a vocational expert to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f), 404.1520(f) (2008); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10.

The regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment that prevents him from any substantial gainful employment. An affirmative answer to question one or a negative answer to question two or four results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920 (2008).

## A. **The ALJ's Decision**

On March 10, 2009, Administrative Law Judge Alfred J. Costanzo issued an unfavorable decision, denying disability status to Plaintiff. R. 10. In the ALJ's decision, he made the following findings of fact and conclusions of law:

He found that Plaintiff met the insured status requirements through December 31, 2011, and that the Plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 16, 2007. R. 15. The ALJ found that the claimant had severe impairments which included ischemic heart disease, a major depressive disorder, a generalized anxiety disorder, diabetes and hypertension. Id. After a synopsis of the medical records, the ALJ found that Plaintiff's heart problems were reasonably controlled, and noted that "only conservative treatment for [Ms. Woodard's] cardiac condition" has been sought since the placement of a stent. R. 19. ALJ Costanzo also found that the Plaintiff's other reported physical conditions of pain and stiffness in

her hands, uncontrolled diabetes, impairment of vision could result in pain and other symptoms that Plaintiff reported, but the medical evidence did not support "the degree of limitation alleged," therefore he found the "claimant's statements concerning the intensity, persistence and limited effects of these symptoms are only partially credible . . . ." Id.

At step two of the sequential evaluation under the Act, ALJ Costanzo found that Plaintiff's "severe impairments" included a major depressive disorder and generalized anxiety disorder, but then stated that Ms. Woodard did not show any symptoms related to depression or anxiety that would "cause more than mild limitations in the claimant's daily activities." R. 17. The ALJ did note that "mental impairments cause 'moderate' limitations in her concentration, persistence or pace in that she is unable to perform more than simple tasks." Id. At step five of the sequential evaluation for disability, the ALJ briefly stated that he would give Ms. Woodard "the benefit of every doubt by taking into account the recent medical evidence of limitations caused by a depressive disorder and generalized anxiety disorder." R. 19. He did not, however, call to testify the Vocational Expert, who was present at the hearing, to discuss the extent of Ms. Woodard's mental impairments on her residual functional capacity.

ALJ Costanzo concluded that, after considering the record, opinion evidence, and testimony given at the administrative hearing, Plaintiff was not disabled under the Social Security Act, and retained the residual functional capacity (RFC) to lift and carry twenty pounds occasionally, ten pounds frequently, stand for up to four hours at thirty minute intervals and sit for up to eight hours in an eight-hour work day. R. 19. Plaintiff retained a RFC to allow her to perform a full range of sedentary work and a wide range of light work, and the Medical-Vocational Rule 201.21 Grids directed a finding of "not disabled." R. 21. The ALJ concluded that significant

jobs exist in the national economy and the Plaintiff retains the ability to adjust to other work. Id.

In their brief in support of summary judgment, Defendant asks this Court to Dismiss Plaintiff's action for failure to state a claim. The following analysis will address this Motion to Dismiss before addressing Ms. Woodard's claims that the Commissioner's decision not to elicit testimony from a vocational expert was not supported by substantial evidence. Because this Court finds that the Commissioner failed to follow Fourth Circuit law directing the calling of a vocational expert to testify where it is unclear whether a nonexertional limitation would affect a plaintiff's RFC, we need not decide Ms. Woodard's final argument challenging the ALJ's use of medical source opinion.

## B. **Defendant's Motion to Dismiss for Failure to State a Claim**

Defendant moves this Court to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(c) and 12(h)(2)(B) for failure to state a claim. Def.'s Mem. in Support of Mot. for J. on the Pleadings and Summ. J. at 9. Defendant asks this Court to apply Fed. R. Civ. P. 8, that a complaint must state "a short plain statement of the claim showing that the pleader is entitled to relief," as modified by the Supreme Court's Twombly and Iqbal rulings. Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Defendant states that the heightened pleading standards pronounced by Twombly and Iqbal apply to all civil actions including challenges to the Social Security benefit determinations. Def.'s Mem. at 11 (quoting Iqbal, 129 S. Ct. at 1953 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. . . . [Rule 8] governs the pleading standard in all civil actions.")). Additionally, Defendant argues that failure to apply Twombly would result in a lack of fair notice to the defense as to the claims against him.

The record in an administrative review is not the equivalent of a complaint, and thus does not provide the proper notice to the defendant in a social security appeal. Id.

As this Court has previously stated in Brady v. Astrue, No. 2:09cv242, 2010 U.S. Dist. LEXIS 77679 (E.D. Va. Feb. 19, 2010), adopted by Brady v. Astrue, No. 2:09cv242, 2010 U.S. Dist. LEXIS 77677 (E.D. Va. July 30, 2010), the purposes of the heightened pleading standards promulgated by Twombly and Iqbal are two-fold: "first, dispel the belief that a court must accept as true legal conclusions contained in a complaint, and second, to require that only a complaint that states a plausible claim for relief survives a motion to dismiss." Brady, 2010 U.S. Dist. LEXIS 77679, at *7 (citing Iqbal, 129 S. Ct. at 1950). After considering the complaint before it in light of the two purposes, the Court still must consider that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., at *7-8. This Court has found that in the context of a social security appeal, the heightened pleading standard does not apply.

In addition to Twombly and Iqbal, the statute providing for judicial review of the administrative social security appeals process is insightful. Section 405(g) of the Act states that an individual "may obtain a review of such decision [of the Commissioner of Social Security] by a civil action commenced within sixty days." 42 U.S.C. § 405(g). As this Court explained in Brady, this passage provides the mechanism for an individual to obtain judicial review in order to escape the bounds of administrative appeals within the Social Security Administration. 2010 U.S. Dist. LEXIS 77679, at *8. The objective is straightforward, to obtain judicial review. Under 42 U.S.C. § 405(g), the Code dictates that the Commissioner must file a certified copy of the transcript of the record including evidence with the Commissioner's answer. The statute provides for the evidence

11

in each case of appeal upon which a court is to base its decision on review. With this factual basis, the statute goes on to note the court's power "to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . ." 42 U.S.C. § 405(g). Thus, the court is provided the factual means to make a determination as to the appropriateness of the Commissioner's decision. In fact, it would be duplicative if plaintiffs were required to amend, or adopt, the facts established in the record to their complaints. As the Supreme Court noted in Iqbal, common sense and judicial experience militate in favor of a simplified complaint that need not specify in detail what relief the plaintiff seeks. See Brady, 2010 U.S. Dist. LEXIS 77679, at *9.

The Social Security Act clearly delineates the purpose of § 405(g) is to provide judicial review of the Commissioner's final decision. There is no reason to believe that Defendant Commissioner is unaware of the grounds for the suit, particularly when one considers that the Commissioner is the custodian of the official record. The policy objectives of Twombly and Iqbal, as noted above, are inapplicable in the context of a Social Security appeal to this Court. The Court is asked to review the Commissioner's findings based on the administrative record, and the claim for relief is stated within said record. In considering Ms. Woodard's complaint, it matters not the detail or specificity of the claim for relief, or the remedy sought, only that she requested judicial review of the Commissioner's final decision. When viewed in the context of Twombly and Iqbal, the complaint is sufficient to survive a motion to dismiss.

## C. Woodard's Motion for Summary Judgment

In her complaint, Plaintiff challenges the ALJ's decision on two grounds. The first is that substantial evidence does not support the ALJ's failure to elicit testimony from the vocational

expert regarding how the claimant's nonexertional limitations would affect her residual functional capacity. Pl.'s Mot. for Summ. J. at 5. The second challenge is the ALJ's rejection of medical source opinion from Dr. Gunawardena, the Plaintiff's treating endocrinologist. As stated above, because this Court recommends that this matter should be remanded based on the failure of the ALJ to elicit testimony from a vocational expert as to the impact of Plaintiff's mental impairments on her residual functional capacity, it need not decide the second challenge to the ALJ's use of medical source opinion evidence.

Plaintiff Woodard has a combination of exertional and nonexertional limitations. The term "exertional" is defined by the Social Security Administration to mean occupations or job requirements which consist of three work positions (standing, walking, and sitting) and four movements of objects by a worker (lifting, carrying, pushing, and pulling). The Social Security Administration classifies occupations as sedentary, light, medium, heavy, and very heavy according to the degree of strength requirements for the occupation. SSAR 83-14, 45 Fed. Reg. 55566 (1980). Any "functional or environmental job requirement which is not exertional is 'nonexertional.'" Id. A nonexertional limitation is a medically determinable condition which is not physical, but may affect the ability of a claimant to work in an occupation or narrow the range of work a person may be able to otherwise complete if not for the nonexertional limitation. A nonexertional limitation is present during all times in a plaintiff's life. Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983). The Social Security Rulings state that mental impairments are nonexertional and may, but may not, affect a person's exertional capacity. See SSAR 83-14. The Ruling 83-14 directs an ALJ, after deciding if a person meets the strength requirements of sedentary, light or medium work, to make a "further decision . . . as to how much of this potential

occupational base remains, considering certain nonexertional limitations which the person may also have." Id. Where a person is not found to be disabled on exertional limitations alone, and has established nonexertional limitations, the Medical-Vocational Tables are not conclusive and are to be used as a "starting point" after which the ALJ evaluates the nonexertional limitations. Id. The tables may be most helpful where nonexertional limitations present an "obvious" effect on an ability to participate in a type of occupation. However, in complex cases, vocational consultants or experts with specialized knowledge of possible effects of nonexertional limitations on the claimant's residual functional capacity are necessary to determine the proper finding of a plaintiff's RFC. Id.

The Fourth Circuit has clarified when a vocational expert is necessary to determine the degree and significance of nonexertional limitations on a plaintiff's residual functional capacity. The court has emphasized that the "grid tables are not conclusive but may only serve as guidelines." Walker v. Bowen, 889 F.2d 47, 48 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). Although "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids . . .[t]he proper inquiry under Grant is whether the nonexertional condition affects an individual's residual functional capacity . . . ." Id. (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)). Most recently, in Washington v. Astrue, 698 F.Supp. 2d 562 (D.S.C. 2010), the court emphasized that at step five of the sequential evaluation, "the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy." Id. at 571. The Commissioner may use the Medical-Vocational Guidelines to aid in their determination of a claimant's exertional ability, but these grids "consider only the strength or exertional component of a claimant's disability," and

therefore the grids are only guidelines where a Plaintiff has nonexertional limitations. Id. (citing Walker, 889 F. 2d at 49); see also Aistrop v. Barnhart, 36 Fed. Appx. 145, 146 (2002) ("In the case of a claimant who suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments that prevent her from performing a full range of work at a given exertional level, the Grids may be used only as a guide. In such a case, the Commissioner must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform."). If a Commissioner is "unable to rely on the grids in making the step five determination, he must use a vocational expert" to bear his burden of proof that jobs exist in the national economy which the claimant is able to perform. Walker, 889 F.2d at 48. Overall, the law directs that where a plaintiff suffers from a nonexertional limitation, the ALJ should consult a vocational expert as to the effect of the limitation on the Plaintiff's residual functional capacity, unless it is clear that the nonexertional limitation would have either no effect or a minimal effect on their ability to perform work at a particular exertional level.

In the present case, the ALJ found that Plaintiff suffered from two nonexertional limitations, major depressive disorder and a generalized anxiety disorder. At step two of the sequential evaluation, he found that both of these impairments were "severe." R. 15. He noted that Plaintiff had been evaluated by Dr. Long who found that Plaintiff suffered from both impairments and these would result in Plaintiff having "difficulty with complex or detailed tasks." R. 16. To support his finding that the Plaintiff is not disabled under the Act, the ALJ stated that Plaintiff's mental impairments would result in moderate limitations in job performance, but did not meet the criteria of "marked" or "extreme" limitations which would cause these disorders to rise to a finding of disabled under the Listings in 20 CFR Part 404, Subpart P, Appendix 1 (the Listing of

Impairments). R. 17. At step five, however, the ALJ failed to elicit the testimony of a vocational expert on the effects of Plaintiff's major depressive disorder and generalized anxiety disorder on her ability to perform a full range of sedentary work and a wide range of light work; her stated exertional functional capacity based on her exertional limitations. In fact, the ALJ failed to discuss the limitations of Plaintiff's nonexertional limitations at all in step five, despite finding the limitations severe in step two. R. 20–21.

Defendant argues in his Motion for Summary Judgment that the medical record does not demonstrate a lengthy record of mental health treatment and the lack of medical treatment for mental health impairments supports the ALJ's reliance on the grid. Def.'s Mem. at 15–16. Defendant further argues that "[b]ecause the evidence demonstrated that plaintiff did not have a significant nonexertional limitation; the ALJ properly relied upon the grid rules for a finding of not disabled." Id. at 16. This Court agrees that if it were clear that the nonexertional limitation had very little effect on the exertional occupation base, the grid could be relied on in making a final determination. The ALJ, however, made no findings which addressed the potential erosion by major depressive disorder and generalized anxiety on Plaintiff's occupational base. Cf. Aistrop, 36 Fed. Appx. at 146 (analyzing the ALJ's decision and stating that the ALJ in Aistrop made specific findings as to the effects of the plaintiff's nonexertional limitations on the RFC). Essentially, Defendant is advocating that it is "clear that additional nonexertional limitations" had little or no effect on the Plaintiff's ability to perform sedentary and light work. Def.'s Mem. at 16. This Court cannot agree that the effects of depression and anxiety disorder are so clear as to negate the necessity of a vocational expert. Major depressive disorder and generalized anxiety disorder exist in varying degrees of severity and affect each afflicted person differently. The ALJ reviewed Dr.

Long's opinion which stated that Plaintiff's mental health impairments would likely have effects on her ability to perform a job. R. 16. Questions remain as to how much and to what extent these limitations could possibly erode the ability to participate in sedentary or light work. A vocational expert is the appropriate source for this information. The inconsistency between the ALJ's findings at step two and step five, as well as the lack of findings of fact as to particularized effect of major depressive disorder and generalized anxiety disorder, as informed by the testimony of a Vocational Expert, on Plaintiff's ability to perform work are errors of law that require the Court remand this matter for further proceedings to determine the extent of Plaintiff's ability to participate in sedentary or light work after evaluating the effects of her nonexertional limitations.

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Defendant's Motion for Judgment on the Pleadings be DENIED and the Defendant's Motion for Summary Judgment be DENIED. The Court recommends that Plaintiff's Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART. It is further recommended that the action be REMANDED for additional fact finding in accordance with this report.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A

party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

                                                                                    /s/
                                                                        Tommy E. Miller
                                                     UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 1, 2010

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Robert W. Gillikin, II, Esquire
Blythe A. Scott, Esquire
Rutter Mills, LLP
160 W. Brambleton Avenue
Norfolk, Virginia 23510


Joel E. Wilson, Esquire
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510


Fernando Galindo, Clerk

By _____
Deputy Clerk
December / , 2010